IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

KEVIN R. GOLDEN,

Plaintiff,

v.                                                                    Case No.  25-2775-JWB

HALLCON CORPORATION,

Defendant.

**MEMORANDUM AND ORDER**

This matter is before the court on Defendant's motion to enforce settlement and award

attorney's fees.  (Doc. 7.)  The motion has been fully briefed and is ripe for decision.  (Docs. 11,

15.)  The motion is GRANTED IN PART and DENIED IN PART for the reasons stated herein.

I.      **Facts and Procedural History**

Plaintiff, who is proceeding pro se, was hired as a driver by Defendant in January 2019.

Essentially, Plaintiff alleges that Defendant retaliated against him on July 2, 2025, after he reported

workplace safety violations.  (Doc. 1 ¶ 5.)  On April 7, 2025, Plaintiff filed a prior employment

discrimination suit against Defendant in this court, titled *Kevin Golden v. Hallcon Corporation*,

2:25-cv-02179-JWB-ADM ("*Hallcon I*").  That suit was dismissed without prejudice after Plaintiff

failed to pay the filing fee.  (*Hallcon I*, Doc. 22.)  Plaintiff filed a barrage of motions in *Hallcon I*

after judgment was entered and also filed a notice of appeal.  Plaintiff's various motions were

denied, and *Hallcon I* remains pending in the Tenth Circuit.[1]

---

[1] According to the Tenth Circuit's docket, Hallcon has moved for a limited remand so that this court could determine whether the parties have an enforceable settlement agreement.  *Hallcon I*, Case No. 25-3166, Doc. 23.)  The panel handling the appeal will rule on the motion but have not yet issued a ruling.  (*Id.*, Doc. 33.)

1

Defendant initiated settlement discussions with Plaintiff on October 20, 2025. On October 27, Plaintiff told Defendant that he had considered Defendant's proposal of $3,000 in exchange for Plaintiff to dismiss all claims in *Halcon I* with prejudice and execute a standard settlement agreement. (Doc. 7-1 at 3–4.) Plaintiff made a counteroffer in which he informed Defendant of a new EEOC charge against Defendant, EEOC Charge No. 460-2025-07871. Plaintiff offered to dismiss *Hallcon I* and withdraw the EEOC charge in exchange for $19,465.83. (*Id.*) On November 10, Defendant extended Plaintiff a final offer. In exchange for payment of $8,300, Plaintiff would agree to dismiss *Hallcon I* with prejudice, withdraw and release the EEOC charge, and release any other charge or claim against Hallcon. (Doc. 18.) Plaintiff would also agree that he would not be re-hired and release any other claim against Hallcon related to his termination. Plaintiff would also agree to executing a standard settlement agreement which included terms of confidentiality, no admission of liability, and a non-disparagement clause. (*Id.*; Doc. 7-2 at 3.) Approximately twenty minutes later, Plaintiff responded "Yes, I accept." (*Id.* at 2.) Defendant then responded to Plaintiff stating, "we have a deal" and informed Plaintiff that a settlement agreement will be prepared in the next few days. (*Id.*) At some point, a settlement agreement was sent to Plaintiff, but it was not executed. (Doc. 13.)

Plaintiff filed this action on December 30, 2025, alleging employment discrimination. With respect to the instant action, Plaintiff alleges that he filed an EEOC charge on December 2, 2025, regarding this retaliation claim. (Doc. 1 ¶ 7.) Although Plaintiff alleges that he filed the charge on December 2, Plaintiff referenced this charge in his email correspondence with Defendant on October 27. (Doc. 7-1 at 4.) Plaintiff noted that it was currently on hold due to the government shut down which could explain the reason for the filing date. (*Id.*) Plaintiff received a right-to-sue notice on December 13, 2025.

On January 30, 2026, counsel for Defendant entered his appearance in this action and filed a motion to enforce settlement. (Doc. 7.) Defendant asks the court to enforce the settlement agreement the parties entered into on November 10, 2025, dismiss this action, and award attorney's fees. In response, Plaintiff contends that the settlement agreement is not enforceable and asks for an evidentiary hearing.

The court is mindful of Plaintiff's pro se status. Plaintiff's pleadings are to be construed liberally. *See Smith v. United States,* 561 F.3d 1090, 1096 (10th Cir. 2009). However, the court may not assume the role of advocate for Plaintiff. *Id.*

## II.    Analysis

Defendant asserts that the parties entered into an enforceable settlement agreement on November 10. The court can enforce a settlement agreement entered into by the parties during litigation. *Shoels v. Klebold*, 375 F.3d 1054, 1060 (10th Cir. 2004). "Issues involving the formation and construction of a purported settlement agreement are resolved by applying state contract law." *Id.* Agreement on all material terms is necessary. *James Colborn Revocable Tr. v. Hummon Corp.*, 55 Kan. App. 2d 120, 408 P.3d 987, 993 (2017). A term is material if it deals "with a significant issue such as subject matter, price, payment, quantity, quality, duration, or the work to be done." *Id.* (quoting Black's Law Dictionary 1698–99 (10th ed. 2014)). "[O]nce one party has made a settlement offer and the other party has unconditionally accepted it, neither party may call off the agreement." *O'Neill v. Herrington*, 49 Kan. App. 2d 896, 317 P.3d 139, 145 (2014). Simply put, a party cannot avoid the terms because he has changed his mind. *TSYS Merch. Sols., LLC v. Pipeline Prods.*, No. 16-4024-SAC, 2016 WL 4702419, at *3 (D. Kan. Sep. 8, 2016). Additionally, "the fact that the parties contemplate the subsequent execution of a formal instrument as evidence of their agreement does not necessarily imply they have not already bound themselves

3

to a definite and enforceable contract." *Smtih v. Via Christi & Assocs.,* No. 17-1270-JWB, 2018 WL 3008504, at *1 (D. Kan. June 15, 2018).

Upon review, it is clear that the parties agreed on the material terms of the settlement agreement. The parties mutually agreed as to an amount and dismissal of all claims, including the new EEOC charge. Plaintiff asserts that he did not agree to all of the terms contained in the draft settlement agreement sent by Defendant and that it is not enforceable. Defendant replies that it does not seek to have the court enforce the draft settlement agreement sent to Plaintiff. Rather, Defendant only seeks to have the court enforce the terms agreed to by the parties in their written communications. (Doc. 15 at 5.) Therefore, the fact that Plaintiff objects to some of the standard provisions in the draft settlement agreement does not preclude the court from enforcing the parties' agreement contained in the email communications.

Plaintiff also argues that enforcing the agreement would violate certain provisions of the Older Workers Benefit Protection Act ("OWBPA"). Plaintiff did not bring age discrimination claims in either case; therefore, this argument is not persuasive.

Finally, Plaintiff contends that he suffers from a mental disability that prevents him from fully understanding what he was agreeing to. (Doc. 11 at 7.) In support of this argument, Plaintiff cites to his complaint in *Hallcon I* which alleges that he suffers from Attention Deficit-Hyperactive Disorder ("ADHD"), impulsiveness, poor decision making, mood swings, anxiety, difficulties concentrating, reading, and learning. (*Id.* at 4, n.2.) In response, Defendant argues that Plaintiff is fully capable of understanding the terms of the agreement and his self-representation in these cases support that conclusion.

Whether a party has the requisite mental capacity to contract is a question of fact. *DeBauge Bros. v. Whitsitt*, 512 P.2d 487, 490, 212 Kan. 758, 762 (Kan. 1973). "The test of mental capacity

4

to contract is whether the person possesses sufficient mind to understand in a reasonable manner the nature and effect of the act in which [he] is engaged." *Id.* Plaintiff may not merely assert conclusory allegations that he lacked capacity to contract. *DeClue v. Gen. Motors Corp.*, No. 99-2229-JWL, 2000 WL 1472856, at *1 (D. Kan. Aug. 22, 2000).

Plaintiff's assertions that he has ADHD and other mental difficulties are not sufficient to show that he lacked mental capacity to form a contract. *Id.* (discussing that evidence of a diagnosis without tying it to capacity is inadequate); *see also Peterson v. Brookdale Senior Living Communities, Inc.*, No. 19-CV-2727-JAR-TJJ, 2020 WL 1877883, at *3 (D. Kan. Mar. 30, 2020), *report and recommendation adopted*, No. 19-2727-JAR-TJJ, 2020 WL 1873620 (D. Kan. Apr. 15, 2020) (finding that diagnosis of ADHD was insufficient to prove incapacity). This is not competent medical evidence from which the court could conclude that he lacks the ability to understand the nature and effect of his actions in agreeing to the terms in the parties' written correspondence. Under Kansas law, courts apply a legal presumption that adults are competent to enter into contracts unless a party demonstrates the lack of capacity. *DeClue,* 2000 WL 1472856 at *1; *Peterson*, 2020 WL 1877883, at *3 (citing cases). Plaintiff has failed to sufficiently show a lack of capacity to contract.

Moreover, Plaintiff has litigated this case and *Hallcon I* himself. Plaintiff's counteroffer to Defendant was clear and concise and identified all of his claims and an understanding that they would be dismissed if the counteroffer was accepted. The correspondence clearly shows that Plaintiff was aware of and understood the nature of the issues that were being discussed. And, with respect to *Hallcon I*, he filed extensive pleadings demonstrating an ability to understand and respond to legal arguments. In this case, Plaintiff filed a response to Defendant's motion that raises several legal arguments. Plaintiff's own actions belie his assertion that he lacks the mental capacity

5

to understand an agreement to dismiss his claims in exchange for a sum of money. Further, Plaintiff's request that this court hold an evidentiary hearing is denied as Plaintiff has failed to make any showing that would support a finding that he lacked mental capacity.

The court finds that Plaintiff had sufficient mental capacity to enter the essential terms of the settlement agreement, namely, dismissal of *Hallcon I* and his EEOC charge that is the subject of this action in exchange for $8,300.

Finally, Defendant seeks attorney's fees for all fees incurred after November 10, 2025, because Plaintiff acted in bad faith in failing to execute the settlement agreement. The court declines to award attorney's fees. Plaintiff is proceeding pro se and was clearly surprised by the significant number of provisions in the standard settlement form. Although the court finds that the parties' settlement agreement is enforceable as to the material terms agreed to in the parties' email communications, the court does not find that Plaintiff acted in bad faith in refusing to sign the written settlement agreement. The court cautions Plaintiff, however, that it may be inclined to award fees to Defendant in the event that Plaintiff continues to litigate this matter unmeritoriously.

## III.    Conclusion

Defendant's motion to enforce settlement (Doc. 7) is GRANTED. Defendant shall pay $8,300 to Plaintiff. On notice of payment, the court will enter an order dismissing the claims against Defendant with prejudice. Defendant's motion for attorney's fees (Doc. 7) is DENIED. IT IS SO ORDERED. Dated this 12th day of March, 2026.

   s/ John W. Broomes

JOHN W. BROOMES
CHIEF UNITED STATES DISTRICT JUDGE
